# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 13, 2008        Decided April 29, 2008

No. 07-7105

AKTIESELSKABET AF 21. NOVEMBER 2001,
APPELLANT

v.

FAME JEANS INC.,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 06cv00585)

———

*Monica P. McCabe* argued the cause for appellant. With her on the briefs were *Oliver N. Blaise, III* and *Mary E. Gately*.

*Robert L. Byer* argued the cause for appellee. With him on the brief were *Lewis F. Gould, Jr.*, *Barry Golob*, *Maxim A. Voltchenko*, and *Matthew C. Mousley*.

Before: HENDERSON, ROGERS and BROWN, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: For some reason, a pair of jeans labeled Jack & Jones will sell for the equivalent of $96. Clearly there is magic in the name, and Fame Jeans tried to capture that magic by registering Jack & Jones as a trademark in the United States. Aktieselskabet (Bestseller),[1] which generated the magic by selling Jack & Jones jeans elsewhere in the world, opposed Fame's trademark application. After the Trademark Trial and Appeal Board (TTAB) granted summary judgment to Fame, Bestseller filed this action in district court, alleging several new grounds for its opposition. The district court dismissed Bestseller's complaint, holding the new grounds waived because Bestseller failed to present them to the TTAB and because Bestseller's complaint failed to meet a new pleading standard the court thought *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), required. Bestseller appeals the dismissal. We hold the district court should hear new claims in a trademark opposition, and we disagree with the district court's interpretation of *Twombly*. Even so, some of Bestseller's claims are legally flawed. Accordingly, we affirm in part and reverse in part.

I

Bestseller, a Danish corporation, has been selling Jack & Jones jeans since 1990. By 2005, its business with the brand had expanded to include jeans, T-shirts and jackets, distributed in Europe, the Middle East, South America, and Asia. In the European Union alone, Bestseller sold nineteen

---

[1] Throughout its filings, Appellant refers to itself as Bestseller, the name of its corporate parent. We follow the same convention.

million articles of branded clothing in 2005. It has registered Jack & Jones and related marks in forty-six countries, and it owns twenty-one domain names incorporating variations of the name.

In 2003, Bestseller decided to expand into North America; its competitor Fame Jeans appears, so far, to have stalled that expansion into the United States by assiduous effort at the U.S Patent and Trademark Office (PTO). Bestseller planned to begin operations in Canada, from which it would develop the brand into the United States. Accordingly, it applied to register the Jack & Jones mark in Canada in August 2004 and in the United States on December 6, 2004. Unfortunately for Bestseller, Fame had already applied to register Jack & Jones in the United States on January 9, 2004. As of their respective filing dates, neither party had tested the susceptibility of American consumers to the allure of Jack & Jones by actually trying to sell any jeans under the brand. Fame, therefore, filed its application under Lanham Act § 1(b), 15 U.S.C. § 1051(b), avowing its intent to use the trademark in commerce. Bestseller, on its part, filed under Lanham Act § 44(e), 15 U.S.C. § 1126(e), swearing it intended to use the mark and citing its 1990 Danish registrations.

Nine days after filing its U.S. application to register Jack & Jones, Bestseller filed an opposition to Fame's application to register the mark, alleging that Fame's registration was likely to cause confusion with Bestseller's Jack & Jones mark and interfere with Bestseller's application to register the mark. On January 30, 2006, the TTAB granted summary judgment on Bestseller's opposition. First, the TTAB pointed out Bestseller had admitted it never used the mark in commerce in the United States, and it explained foreign use alone gave Bestseller no right of priority here. Second, the

TTAB held Bestseller's December 6, 2004, application junior to Fame's January 9, 2004, application.

Bestseller sought district court review of the TTAB decision, under Lanham Act § 21(b), 15 U.S.C. § 1071(b). In its complaint, Bestseller renewed its allegation that it had prior rights to the Jack & Jones mark due to its § 44(e) application, and it also claimed to have used the mark in the United States. In addition, Bestseller argued the court should apply equitable principles to give it rights in the mark, since it has used the mark around the world for seventeen years and Fame has never used it anywhere. Bestseller also added new claims that Fame's § 1(b) application was void *ab initio* for lack of bona fide intent to use the mark and that Fame misrepresented its intent to the PTO. The district court dismissed all the claims. The new claims it held waived; it agreed with the TTAB that Bestseller's § 44(e) application was too late; and it thought the misrepresentation claim fell short of its putative *Twombly* standard.

## II

This Court reviews the dismissal of a complaint *de novo*. *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006). We first discuss two threshold issues on which the district court based most of its analysis.

## A

Although a district court owes a certain degree of deference to the TTAB's findings of fact, both parties may introduce new evidence in a § 21(b) action. *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 989 (D.C. Cir. 1998) (citing 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 21:20 (1997)).

The question before us is whether a party may also introduce new issues not brought before the TTAB. We join several of our fellow circuits in allowing new issues in § 21(b) actions. *See, e.g.*, *PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 80 (1st Cir. 1996); *CAE, Inc. v. Clean Air Eng'g*, *Inc.*, 267 F.3d 660, 674 (7th Cir. 2001).

District courts have broad authority to review trademark decisions by the U.S. Patent and Trademark Office (PTO), both before and after the registration of a mark. They may order the PTO to cancel a registration "in whole or in part" or to restore a canceled registration, Lanham Act § 19, 15 U.S.C. § 1119, and during a civil action for infringement, a registration is only *prima facie* evidence that the registrant owns a valid mark, Lanham Act § 15, 15 U.S.C. § 1115(a); *Am. Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 817–18 (4th Cir. 2001). In addition, district courts may authorize the PTO to register or to deny registration to a pending mark. 15 U.S.C. § 1071(b)(1). Courts use this power to remedy erroneous decisions of the TTAB in any of the various kinds of proceeding committed to it, including oppositions, cancellation petitions, and interferences. For a person challenging a TTAB decision, a civil action in district court is an alternative to review by the Court of Appeals for the Federal Circuit. *Id.*

The proceedings differ in important ways, with Federal Circuit review taking the form of an appeal and the district court alternative being an ordinary civil action. In a Federal Circuit appeal, the PTO transmits its record to the court, which "shall review the decision from which the appeal is taken on the record." 15 U.S.C. § 1071(a)(4). In an *ex parte* case, the PTO must also explain the grounds for its decision, "addressing all the issues involved in the appeal." 15 U.S.C. § 1071(a)(3). By contrast, in a § 21(b) action, the PTO does

not automatically transmit its record to the court; rather, any party may, on its own motion, enter the record into evidence. Once entered, "[t]he testimony and exhibits" of the PTO record "have the same effect as if originally taken and produced in the suit." 15 U.S.C. § 1071(b)(3). The district court then decides *de novo* whether the application at issue should proceed to registration, or the registration involved should be canceled, or "such other matter as the issues in the proceeding require, as the facts in the case may appear." 15 U.S.C. § 1071(b)(1); *see Material Supply*, 146 F.3d at 990.

Fame presses the general rule that judicial review of agency action is limited to the issues presented before the agency. But this rule usually arises from statutes providing for judicial review, *Sims v. Apfel*, 530 U.S. 103, 107–08 (2000), and it is certainly subject to statutory modification, *Time Warner Entm't, Co. v. FCC*, 144 F.3d 75, 79 n.5 (D.C. Cir. 1998); *cf. Darby v. Cisneros*, 509 U.S. 137, 153–54 (1993) (APA governs exhaustion). Just so here: the Lanham Act directs a district court to conduct a new trial to decide whether an applicant is entitled to a registration. In that proceeding, the court may consider both new issues and new evidence that were not before the TTAB. This statutory mandate becomes clear from a comparison of § 21(b), containing the "issues in the proceeding" language, with the analogous provision in the Patent Act, 35 U.S.C. § 145, which lacks that phrase. Both statutes direct a district court to decide "as the facts in the case may appear." The "case" in question refers to the district court action, not the prior events at the PTO, with the consequence that the court should decide on the facts before it, even though they were not before the PTO. Accordingly, in both patent and trademark cases, a party may introduce new evidence. *Am. Steel & Wire Co. of N.J. v. Coe*, 105 F.2d 17, 19 (D.C. Cir. 1939) (patent); *Material Supply*, 146 F.3d at 989 (trademark). While new

issues, on the other hand, are barred in a patent case, *DeSeversky v. Brenner*, 424 F.2d 857, 858 (D.C. Cir. 1970), under § 21(b), the district court is also to decide "as the *issues* in the proceeding may require." 15 U.S.C. § 1071(b)(1) (emphasis added). Like "case," the word "proceeding" refers to the district court action. Thus, in a § 21(b) action, a district court should decide on the issues before it, including new issues.

Indeed, this conclusion seems unavoidable, since a district court does not necessarily receive the TTAB record. Rather, the record "shall be admitted on motion of any party." 15 U.S.C. § 1071(b)(3). By comparison, in judicial review under the Administrative Procedure Act, a court shall "review the whole record," which of course the court receives as a matter of course. 5 U.S.C. § 706; *see also* CHARLES A. WRIGHT & CHARLES H. KOCH, JR., FEDERAL PRACTICE AND PROCEDURE: JUDICIAL REVIEW OF ADMINISTRATIVE ACTION § 8306, at 73 (2006) ("It is black letter law that . . . review in federal court must be based on the record before the agency . . . ."). If, in an *inter partes* matter like an opposition, in which the PTO may choose not to participate, 15 U.S.C. § 1071(b)(2), no party introduced the TTAB record, a district court would not even be able to identify the issues raised before the TTAB, much less hold other issues waived.

Moreover, the Lanham Act establishes a fluid relationship between the TTAB and the courts, in which the TTAB does not have the authority of an ordinary agency. Unlike an ordinary agency, whose decisions we would review under the deferential standards of APA § 706, the PTO's decision to register a trademark is subject to later collateral attack during which registration is only *prima facie* evidence of the mark's validity, rebuttable by a preponderance of the evidence. *See Colt Def. LLC v. Bushmaster Firearms, Inc.*,

486 F.3d 701, 708 (1st Cir. 2007); *Tie Tech., Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002); *Am. Online*, 243 F.3d at 817.[2] Further, whereas ordinarily parties must exhaust their administrative remedies before seeking judicial review of agency decisions, the Lanham Act provides an independent civil action to cancel a completed trademark registration without first petitioning the PTO. 15 U.S.C. § 1119; *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 873 (3rd Cir. 1992); *Windsurfing Int'l Inc. v. AMF Inc.*, 828 F.2d 755, 758 (Fed. Cir. 1987). In addition, two of our sister circuits have even interpreted § 21(b) as allowing a court, in appropriate circumstances, to adjudicate a registration while the application is still pending at the PTO. *Pioneer Healthcare*, 75 F.3d at 80–81; *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 854 (2d Cir. 1988). When the statute does not require exhaustion of the administrative procedure itself, it would be odd to require exhaustion on particular issues during that procedure.

Nor does *Wilson Jones Co. v. Gilbert & Bennett Mfg. Co.*, 332 F.2d 216, 218 (2d Cir. 1964) (as amended), persuade us to the contrary. That case relied on *Gold Seal Co. v. Weeks*, 129 F. Supp. 928, 937 (D.D.C. 1955), which itself mistook this circuit's existing rule against considering new

---

[2] We do not mean to suggest that we would not defer to the TTAB's findings of fact during § 21(b) review. After *Dickinson v. Zurko*, which prescribed "substantial evidence" review of the PTO's fact-finding in patent examinations, 527 U.S. 150 (1999), some courts have applied that standard in trademark cases as well, *e.g. On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085 (Fed. Cir. 2000), in place of the older "thorough conviction" standard. We need not address this issue, because the TTAB granted summary judgment, making no findings of fact, and therefore the district court owed it no deference at all. *Material Supply*, 146 F.3d at 990.

patent claims, *Cherry-Burrell Corp. v. Coe*, 143 F.2d 372, 373 (D.C. Cir. 1944), for a rule against new issues. In any case, *Gold Seal* arose under a previous version of § 21. At the time, the Lanham Act cross-referenced 35 U.S.C. § 145 to provide the procedure for trademark review, but the modern statute prescribes its own procedures, including the "issues in the proceeding" language. *Compare* 15 U.S.C. § 1071 (1952), *amended by* Pub. L. No. 87-772, § 12, 76 Stat. 769, 771 (1962), *with* § 1071(b)(1) (2000). *Wilson Jones* postdated the amendment, but it relied on *Gold Seal* without discussing the change. Section 21(b) in its current form limits a district court to evaluation of "the application involved" in the TTAB's decision but directs the district court to consider all the relevant issues brought by either party, regardless of whether those issues were before the TTAB.

B

In addition, this case questions how much detail Bestseller must allege to avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court performed such an analysis only for Bestseller's third claim, for fraudulent misrepresentation, because it dismissed Bestseller's claim to have made prior use of the mark in the United States and its claim that Fame's application was void *ab initio* as waived. Since we have concluded § 21(b) does not provide for issue waiver, our *de novo* review must proceed to the adequacy of Bestseller's allegations.

Ordinarily a sufficient complaint "contain[s] a short and plain statement of the claim showing that the pleader is entitled to relief," enough to give a defendant "fair notice of the claims against him." *Ciralsky v. CIA*, 355 F.3d 661, 668–70 (D.C. Cir. 2004) (quoting FED. R. CIV. P. 8(a)). In deciding a 12(b)(6) motion, a court "constru[es] the complaint

liberally in the plaintiff's favor," "accept[ing] as true all of the factual allegations contained in the complaint," *Kassem v. Wash. Hosp. Ctr.*, No. 06-7161, 2008 U.S. App. LEXIS 1174, at \*2 (D.C. Cir. Jan. 22, 2008), "with the benefit of all reasonable inferences derived from the facts alleged," *Stewart*, 471 F.3d at 173. However, the district court interpreted *Twombly* as establishing a new threshold for complaints: enough facts to "clarify the grounds" on which each claim rests and "nudge[] their claims across the line from conceivable to plausible." *Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 511 F. Supp. 2d 1, 18–19 (D.D.C. 2007). Many courts have disagreed about the import of *Twombly*.[3] We conclude that *Twombly* leaves the long-standing fundamentals of notice pleading intact.

---

[3] *See, e.g.*, *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008) (*Twombly* gave 12(b)(6) "more heft"); *Iqbal v. Hasty*, 490 F.3d 143, 157–59 (2d Cir. 2007) ("requiring not a universal standard of heightened fact pleading" but a "flexible 'plausibility standard'" under which "a conclusory allegation might . . . need to be fleshed out . . . [in] response to a defendant's motion for a more definite statement"); *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (no probability requirement at the pleading stage); *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, No. 07-1084, 2008 U.S. App. LEXIS 1916, at \*9 (4th Cir. Jan. 29, 2008) (unpublished) (pleading only needs to give "fair notice"); *Lindsay v. Yates*, 498 F.3d 434, 440 n.6 (6th Cir. 2007) (concluding only that *Twombly* did not overrule *Swierkewicz*); *Airborne Beepers & Video, Inc. v. AT&T Mobility L.L.C.*, 499 F.3d 663, 667 (7th Cir. 2007) ("*Twombly* did not signal a switch to fact-pleading"); *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007) (plaintiff must allege facts "that affirmatively and plausibly suggest" he has the claimed right, not just "facts that are merely consistent with such a right"); *Skaff v. Meridien N. Amer. Beverly Hills, L.L.C.*, 506 F.3d 832, 842 (9th Cir. 2007) (citing *Twombly* as instructing courts "not to impose such heightened [pleading] standards"); *Dudnikov v. Chalk & Vermilion Fine Arts,*

11

"Rule 8 is the keystone of the system of pleading" in federal procedure, and "the functioning of all the procedures in the federal rules . . . are intertwined inextricably with the pleading philosophy embodied in Rule 8." 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1202, at 87–88 (3d ed. 2004). The pleadings serve specific functions of giving notice of "the general nature of the case and the circumstances or events upon which it is based," so the parties can prepare and the court can dispose of the case properly. Charles E. Clark, *Simplified Pleading*, 2 F.R.D. 456, 457, 460 (1943). Accordingly, Rule 8 requires, not a specific quantity of facts, but simply "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see also* Richard L. Marcus, *The Revival of Fact Pleading Under the Federal Rules of Civil Procedure*, 86 COLUM. L. REV. 433, 439 (1986).

Over the years, courts have tended to drift away from this standard by imposing various requirements of particularity. *See generally* Christopher M. Fairman, *Heightened Pleading*, 81 TEX. L. REV. 551 (2002). The Supreme Court has continually pruned back such requirements, with the admonition that we are not to impose heightened pleading requirements. *See, e.g.*, *Swierkewicz v. Sorema N.A.*, 534

*Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (courts must "tak[e] as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiff's complaint"); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007) (courts may not assess the probability of facts, but a plaintiff must "allege[] enough facts to suggest, raise a reasonable expectation of, and render plausible" his claim); *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007) (plaintiff need only "place [a defendant] on notice as to what he must defend").

U.S. 506, 511–12 (2002); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Scheuer v. Rhodes*, 416 U.S. 232, 249–50 (1974). After decades of such consistency, we will not lightly assume the Supreme Court intended to tighten pleading standards.

Indeed, the Court has indicated quite clearly that it meant no such thing. *Twombly* itself reiterated that a complaint "does not need detailed factual allegations." 127 S. Ct. at 1964. Further, the Court denied "apply[ing] any 'heightened' pleading standard," because any heightened standard would have to arise from an amendment of the Federal Rules of Civil Procedure. *Id.* at 1973 n.14 (citing *Swierkewicz* and *Leatherman*). Rule 8(a), as the Court reminded, contains only "the threshold requirement" that the statement of a claim "show that the pleader is entitled to relief." *Id.* at 1966. As the Court said, Twombly's complaint failed that basic requirement, not any higher requirement for allegations that were "[]sufficiently particularized." *Id.* at 1973 n.14. If, despite this clear language, *Twombly* itself left any doubt, the Court subsequently emphasized the continuation of the prior Rule 8(a) standard: "[S]pecific facts are not necessary," and a complaint need only give the defendant fair notice of the claims. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (per curiam).

The forms accompanying the Federal Rules of Civil Procedure illustrate the concept of fair notice with numerous exemplary complaints that "suffice under these rules." FED. R. CIV. P. 84; *see also* Clark, 2 F.R.D. at 464 ("[Q]uite essential . . . are the illustrative forms."). In general, a complaint should simply identify the "circumstances, occurrences, and events" giving rise to the claim, *Twombly*, 127 S. Ct. at 1965 n.3 (quoting WRIGHT & MILLER, *supra*, § 1202, at 94, 95), or "inform the opponent of the affair or

transaction to be litigated," Clark, 2 F.R.D. at 460–61.[4]  For example, Form 11, the example complaint for negligence, says that defendant drove a car against the plaintiff at a certain time in a certain place.  Form 10, for suing on a note, cites the date of the note, the sum promised, and the interest rate imposed.  Form 18, for patent infringement, recites the number of the patent allegedly infringed and explains what product of the defendant's infringes.  *Twombly* observed that a direct allegation of conspiracy analogous to the forms would say who conspired, at what time, to do what.  127 S. Ct. at 1970 n.10.

Of course, these forms illustrate details that are sufficient, not necessary.  Thus, in *Twombly*, although the complaint provided only a conclusory allegation of conspiracy, the plaintiff could have made out the claim in other ways.  127 S. Ct. at 1970 ("[T]he complaint leaves no doubt that plaintiffs rest their § 1 claim on descriptions of parallel conduct and not on any independent allegation of actual agreement.").  To the extent direct allegations are missing, "a complaint must contain . . . inferential allegations."  *Id*. at 1969.  *Twombly* determined that a certain set of factual allegations did not support an inference that the defendants conspired in violation of the Sherman Act: "Without more, parallel conduct does not suggest conspiracy," and "nothing contained in the complaint invests

---

[4] Since a complaint has always had to meet this standard, it has never been literally true, as *Twombly* noted, that a complaint is adequate unless "no set of facts" consistent with the complaint could support a claim.  127 S. Ct. at 1968–70 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).  We have never accepted "legal conclusions cast in the form of factual allegations," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), because a complaint needs *some* information about the circumstances giving rise to the claims.

either the action or inaction alleged with a plausible suggestion of conspiracy." *Twombly*, 127 S. Ct. at 1966, 1971.

In sum, *Twombly* was concerned with the plausibility of an inference of conspiracy, not with the plausibility of a claim. A court deciding a motion to dismiss must not make any judgment about the probability of the plaintiff's success, for a complaint "may proceed even if it appears 'that a recovery is very remote and unlikely,'" *Id.* at 1965 (quoting *Scheuer*); a complaint "may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations," *id.* at 1969 n.8. Further, the court must assume "all the allegations in the complaint are true (even if doubtful in fact)," *Twombly*, 127 S. Ct. at 1965 (citing *Swierkewicz*), and the court must give the plaintiff "the benefit of all reasonable inferences derived from the facts alleged," *Stewart*, 471 F.3d at 173.

## III

Bearing in mind these general considerations, we turn to the claims at issue in this appeal. Bestseller contests Fame's pending trademark application on three grounds, and the district court rejected most of Bestseller's arguments on the improper ground that Bestseller failed to raise them before the TTAB. Nevertheless, we may affirm the dismissals for any reason properly raised by the parties. *Barr v. Clinton*, 370 F.3d 1196, 1202 (D.C. Cir. 2004).

## A

First, Bestseller opposes Fame's application based on Lanham Act § 2(d), under which a mark may not be registered if it is "likely . . . to cause confusion" with respect

to "a mark . . . previously used in the United States." 15 U.S.C. § 1052(d). An opposer under § 2(d) must show "it ha[s] priority and that registration of the mark creates a likelihood of confusion." *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1162 (Fed. Cir. 2002) (cancellation proceeding under § 2(d)). The parties do not dispute that Bestseller has sufficiently alleged likelihood of confusion, since Bestseller and Fame want to use the same trademark on the same product. *See* Am. Comp. ¶ 18.[5] As to priority, Bestseller asserts prior rights to the Jack & Jones mark on the basis of its December 6, 2004, § 44(e) application and on the basis of its alleged use in the United States. Because Fame filed its intent-to-use application on January 9, 2004, Bestseller must be able to claim priority earlier than that date.

Bestseller disputes even this point, pointing to Lanham Act § 7(c), which establishes a trademark application as constructive use "[c]ontingent on registration of a mark." 15 U.S.C. § 1057(c). An intent-to-use application cannot mature into a registration before the applicant actually uses the mark in commerce. 15 U.S.C. § 1051(d). Therefore, according to Bestseller, an intent-to-use application, by itself, earns no trademark rights, and no priority attaches before the intent-to-use applicant engages in actual use of the mark. Until that point, the intent-to-use applicant would continue to be vulnerable to rival users, even those who begin use after the intent-to-use filing date or, like Bestseller, file a later application.

---

[5] Although Fame does not dispute the sufficiency of Bestseller's allegations of confusion, it does argue Bestseller fails to bring a § 2(d) claim at all because Bestseller failed to cite § 2(d). But so long as the basis for a claim is clear, a complaint need not "plead law" in specific detail. *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000).

While an intent-to-use application does not, by itself, confer any rights enforceable against others, it does give an applicant the right to engage in the statutorily prescribed application procedure. *See WarnerVision Entm't Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 262 (2d Cir. 1996) (because an intent-to-use applicant has the right to engage in use so as to complete registration, a court may not enjoin that use to protect the rights of a rival who began use after the intent-to-use filing date). Bestseller may only contest Fame's application within the confines of that scheme. A trademark opposition must be based on "a *statutory* ground"—such as a legal defect or deficiency in the application—"which negates the appellant's right to the subject registration." *Young v. AGB Corp.*, 152 F.3d 1377, 1380 (Fed. Cir. 1998); 3 MCCARTHY, *supra*, § 20:13, at 20–28. Section 7(c) is a potential source of rights for a trademark registrant, not a requirement for or a source of defects in an application. Bestseller mistakes § 7(c) for the true ground for its opposition, which is § 2(d). *See* TTAB Op., Am. Compl. Exh. 1, at 3; Am. Comp. ¶ 18 (alleging likelihood of confusion).

We conclude that under § 2(d), an intent-to-use applicant prevails over any opposer who began using a similar mark after the intent-to-use filing date. Covering applications of all types, including § 1(b) applications, § 2(d) simply says a mark is invalid if there is a likelihood of confusion with a mark "previously used." 15 U.S.C. § 1052(d). "Previously used" must mean used before some date, and for a pending § 1(b) application, there is only one date that could apply: the filing date. Perhaps one could argue that a § 1(b) applicant will eventually use the mark in commerce; § 2(d) might refer to the date of that use. However, the Lanham Act does not require an intent-to-use applicant to begin using his mark until he receives a notice of allowance, which can happen

only after the end of all opposition proceedings on the application. 15 U.S.C. §§ 1051(d), 1063(b). Given the sequence of events established by statute, we must assess Bestseller's claim to priority in opposition without asking whether Fame has used the mark, relying only on Fame's filing date as an intent-to-use applicant.

Holding to the contrary, as Bestseller urges, would not only make nonsense of § 2(d) but would also vitiate the intent-to-use application system itself. Congress created the intent-to-use application in the 1988 amendments to the Lanham Act with the goal of eliminating the need to use a mark before applying to register it. *See* S. Rep. No. 100-515, at 6 (1978), *as reprinted in* 1988 U.S.C.C.A.N. 5577, 5582. Congress regretted the "unnecessary legal uncertainty" caused by the use requirement, since a business might adopt a mark and invest in product development and marketing without being sure its use had earned it rights to the mark. *Id*. at 5. Constructive use, as codified in § 7(c), was a central element of the system: "Without constructive use, the certainty envisioned by the intent-to-use application system would not be achieved; an intent-to-use applicant would be vulnerable to pirates and *to anyone initiating use after it files its application*." *Id*. at 29 (emphasis added). Bestseller, as an applicant claiming priority from December 5, 2004, stands in exactly the position of a rival starting use after an intent-to-use filing.[6] Allowing priority to Bestseller would devalue Fame's application on the assumption Fame had not made actual use by that date, precisely the result Congress wanted

---

[6] If anything, Bestseller's argument is even weaker, since a second main motivation for the 1988 amendments was to eliminate the perceived unfairness of the § 44(d) and § 44(e) applications. Since foreign applicants were able to claim priority from their filing dates without actual use, Congress wanted domestic applicants to be able to do the same. S. Rep. No. 100-515, at 4–5.

to avoid. Thus, the legislative history supports our conclusion, based on the text of § 2(d), that an intent-to-use applicant may rely on his filing date to establish priority during an opposition proceeding. The TTAB has consistently maintained the same position, and other courts have ordinarily assumed this interpretation as well. *Zirco Corp. v. AT&T Co.*, 21 U.S.P.Q.2d 1542, 1544 (T.T.A.B. 1992); *see also, e.g.*, *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 186 F.3d 311, 315 (3rd Cir. 1999).

B

Since Fame Jeans filed its application on January 9, 2004, Bestseller must establish use, either actual or constructive, before that date.[7] Constructive use can arise under § 7(c), which grants priority, based on filing date, to a U.S. application or to a foreign application that was followed by a timely U.S. application under § 44(d). Bestseller filed a U.S. application on December 6, 2004, based on its 1991 Danish registration. It neither complied with the six-month timeliness requirement of § 44(d) nor even filed its application under § 44(d). Therefore, Bestseller cannot demonstrate any constructive use prior to Fame's filing date. However, Bestseller has adequately alleged actual use. Although the complaint does not set forth trademark use to earn Bestseller rights in the Jack & Jones mark, an opposer who has made enough "analogous" use can still defeat a registration. *See Malcolm Nicol & Co. v. Witco Corp.*, 881

---

[7] Bestseller also demands priority as a matter of equity. Courts have no power to deny a pending trademark registration on this basis, because the registration procedure is a statutory construct. In the cases on which Bestseller relies, equity was a defense to infringement liability. *E.g. Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 627 F.2d 628, 630 (2d Cir. 1980).

F.2d 1063, 1065 (Fed. Cir. 1989) (quoting 3 MCCARTHY, *supra*, § 20:4 (1984)).

First, Bestseller fails to allege actual use in the most straightforward way, by showing its own protectible right to the Jack & Jones trademark in the United States. At common law, "prior ownership of a mark is only established as of the first actual use of a mark in a genuine commercial transaction." *Allard Enters., Inc. v. Adv. Programming Res., Inc.*, 146 F.3d 350, 358 (6th Cir. 1998). The 1988 amendments to the Lanham Act codified a standard of "use in commerce," necessary for a valid trademark registration, which means "the bona fide use of a mark in the ordinary course of trade," including, for a trademark, attaching the trademark to goods. 15 U.S.C. § 1127. In any case, "sporadic or minimal" sales are not sufficient. *Allard Enters.*, 146 F.3d at 359; *see also Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992) ("A few bottles sold over the counter . . . and a few more mailed to friends" are not sufficient use.). While a single sale may indicate the first use of a mark, it must be the beginning of "continuous commercial utilization." *Allard*, 146 F.3d at 358. Obviously, as § 1052(d) requires, such use must also be "in the United States." *See Person's Co. v. Christman*, 900 F.2d 1565, 1568–69 (Fed. Cir. 1990) (T-shirt sales in Japan are not "use in United States commerce").

However, Bestseller need not "meet the technical statutory requirements to register . . . [a mark] to have a basis for objection to another's registration." *Nat'l Cable Television Ass'n v. Am. Cinema Editors, Inc.*, 937 F.2d 1572, 1578 (Fed. Cir. 1991). Section 2(d) requires only "use[] in the United States," and adoption of the mark by use analogous to strict trademark use will therefore suffice. *T.A.B. Sys., Inc. v. Pactel Teletrac*, 77 F.3d 1372, 1375 (Fed.

Cir. 1996). An opposer may rely on myriad forms of activity besides sales themselves, including, among others, regular business contacts, after-sales services, advertising of various forms, and marketing. *First Niagara Ins. Brokers, Inc. v. First Niagara Fin. Group*, 476 F.3d 867, 868–69 (Fed. Cir. 2007); *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 434 (7th Cir. 1999); *Malcolm Nicol*, 881 F.2d at 1064. Even marketing of a trademarked product before the product is ready for sale has the potential to defeat a rival's registration. *See Old Swiss House, Inc. v. Anheuser-Busch, Inc.*, 569 F.2d 1130, 1133 (C.C.P.A. 1978). Still, desultory marketing such as sending out occasional press releases is not enough. *Id.* Analogous use must be "of such a nature and extent as to create public identification of the target term with the opposer's product." *T.A.B. Sys.*, 77 F.3d at 1375.

Bestseller's allegations fall short of showing a sale, whether in the United States or to an American abroad, as the beginning of a continuous commercial exploitation of the Jack & Jones mark in the United States; but they do give fair notice of a claim to analogous use. While Bestseller clearly sells millions of dollars worth of Jack & Jones branded clothing elsewhere in the world, it fails to allege any sales in the United States or to Americans. The closest Bestseller comes is saying this clothing "has been available to U.S. consumers through Bestseller's foreign customers and stores as well as through re-sales on eBay.com." Am. Compl. ¶ 14. This allegation does not imply any American sales at all, much less continuous commercial sales.

By contrast, Bestseller actually does say it conducted "research and marketing for use of the mark within the United States." Am. Compl. ¶ 29.[8] The complaint does not say this

---

[8] We continue to construe complaints liberally by interpreting ambiguous text in the complaint in the light most favorable to the

marketing was sufficiently extensive to create an awareness of the Jack & Jones brand among American consumers, but it is reasonable to infer such an awareness from Bestseller's other allegations. Presumably, Bestseller will need to produce more substantial evidence if Fame contests this conclusion. In light of our conclusion that *Twombly* did not tighten the requirements for pleading, we need not consider whether it is convincing or plausible that Bestseller adopted the Jack & Jones mark in the United States. Simply put, the allegation of marketing in the United States, together with the inference of public association, is enough to give Fame fair notice of what it must contest. No more is required of a complaint.

C

Second, Bestseller claims Fame's application was void *ab initio* for lack of a bona fide intent to use the Jack & Jones mark in commerce. A bona fide intent is a statutory requirement of a valid trademark application under § 1(b), and the lack of such intent is therefore a ground on which Bestseller may oppose Fame's application. MCCARTHY, *supra*, § 20:21, at 20-60; *see also Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1031 (C.C.P.A. 1982) ("Standing having been established, petitioner is entitled to rely on any statutory ground which negates [applicant's] right to the subject registration.").

The TTAB has held § 1(b) to require both actual intent to use a mark in commerce and evidence, contemporary with the

plaintiff. *E.g. ACLU Found'n of S. Cal. v. Barr*, 952 F.2d 457, 472 (D.C. Cir. 1991) ("The allegations . . . although not framed in precisely these terms, could be interpreted to support such a cause of action."). Here, we take Bestseller to mean marketing *in* the United States.

application, that objectively demonstrate such an intent. *Wet Seal, Inc. v. FD Mgmt., Inc.*, 82 U.S.P.Q.2d 1629, 1633 (T.T.A.B. 2007) (actual intent); *Commodore Elecs. Ltd. v. CBM Kabushiki Kaisha*, 26 U.S.P.Q.2d 1503, 1507 (T.T.A.B. 1993) (objective standard). We agree with this interpretation. The provision says "[a] person who has a bona fide intention, under circumstances showing the good faith of such person, to use a trademark in commerce" may apply to register the mark. 15 U.S.C. § 1051(b)(1). The phrases "bona fide" and "good faith" ordinarily refer to a person's actual, subjective state of mind. BLACK'S LAW DICTIONARY 177 (6th ed. 1990); *see Howard v. SEC*, 376 F.3d 1136, 1145 (D.C. Cir. 2004). Certainly a person will fail to have a "bona fide" intent to use a trademark if his actual intent is otherwise. In addition, "bona fide" means not fraudulent or feigned, BLACK'S LAW DICTIONARY, *supra*, at 177, and in some circumstances, showing a "bona fide" intent will actually require proving certain objective facts, *e.g. W. Air Lines, Inc. v. Criswell*, 472 U.S. 400, 412–14 (1985) (under ADEA, a "bona fide occupational qualification" must be reasonably necessary). Here, Congress made clear that a "bona fide intent to use" also involves an objective standard by specifying there must be "circumstances showing . . . good faith."

Thus, an opposer may defeat a trademark application for lack of bona fide intent by proving the applicant did not actually intend to use the mark in commerce or by proving the circumstances at the time of filing did not demonstrate that intent. To state a claim on the latter ground, an opposer only has to notify the applicant of the general "circumstances, occurrences, and events" causing the flaw in the application. *Twombly*, 127 S. Ct. at 1965 n.3. Although the complaint need not go into detail, it must at least notify the applicant of how the general circumstances fail to show intent. *Cf. Commodore Elecs.*, 26 U.S.P.Q.2d at 1507 (because under the

objective standard, "the absence of any documentary evidence on the part of an applicant regarding such intent is sufficient to prove that the applicant lacks" a bona fide intent, an opposer need only allege that absence).

Bestseller's allegations certainly depict circumstances that belie Fame's good faith intent to sell Jack & Jones jeans. Bestseller alleges it has used the Jack & Jones mark around the world, and it says the mark has become famous. It alleges Fame is a rival in the clothing industry around the world and particularly in Canada, where Bestseller began its North American market entry. Bestseller further alleges Fame knew Bestseller was planning to expand in the United States and planned to "thwart" that expansion. Finally, Bestseller claims Fame "has never used the Jack & Jones mark anywhere in the world" and "investigation reveals that it does not intend" to use it in the United States. Notably, despite how long Bestseller has been selling clothes under the brand, Fame filed its U.S. application for the mark immediately after Bestseller began preparing to sell its products in Canada.

Bestseller's allegations meet two necessary conditions. First, they indicate generally the circumstances that suggest Fame lacked a bona fide intent to use Jack & Jones. These circumstances do not *necessarily* indicate a lack of good faith, but we need not infer that lack because Bestseller directly alleged Fame simply wanted "to interfere with Bestseller's stated intention to use the mark," Am. Compl. ¶ 39. *See, e.g.*, *Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006) (Title VII plaintiff need not "negate the FBI's alternative explanations for its actions," because the complaint alleged "'the Government retaliated against me because I engaged in protected activity'"); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1117 (D.C. Cir. 2000) (court must take as true employee's allegation that employer used his convictions as

"a pretext for termination"). We assume that allegation to be true, and thus Bestseller has given Fame adequate notice of the claim it must defend.

D

Finally, Bestseller's third claim rests on Fame's alleged misrepresentation to the PTO that Fame intended to use the Jack & Jones mark in commerce. The district court assumed this claim rested on District of Columbia law and, having dismissed all Bestseller's Lanham Act claims, dismissed its misrepresentation claim as well for lack of supplemental jurisdiction and for failure to state a claim. Bestseller disputes the dismissal but has consistently agreed the claim sounds in common law. Appellant's Reply Br. at 18–19; Oral Argument at 7:50–8:00. As an independent, non-statutory claim, it is not a basis for reversing the TTAB's decision or directing the PTO to grant or deny a trademark registration. *See Young*, 152 F.3d at 1378, 1380.

A fraudulent misrepresentation claim should meet the requirements of particularity of Rule 9(b) of the Federal Rules of Civil Procedure, but we need not discuss the adequacy of Bestseller's allegations of fraud because Bestseller utterly fails to allege, indeed contradicts, the element of reliance. A plaintiff may recover for a defendant's fraudulent statement only if the plaintiff took some action in reliance on that statement. *See Va. Acad. of Clinical Psychologists v. Group Hospitalization & Med. Servs., Inc.*, 878 A.2d 1226, 1237–38 (D.C. 2005). Rather than suggesting its own reliance, Bestseller says the PTO relied on Fame's alleged misrepresentation. Bestseller's only action in response to Fame's statement of an intent to use the mark appears to have been opposing Fame's application—an action that hardly suggests Bestseller detrimentally relied on that statement.

## IV

In conclusion, the district court erred insofar as it dismissed any of the claims because Bestseller failed to raise them before the TTAB. Considering the pleadings on the merits, Bestseller stated two grounds for opposing Fame's application: likelihood of confusion with respect to the mark already used by Bestseller and lack of a bona fide intent to use the mark. With respect to the former, Bestseller adequately alleged priority only in the sense of its marketing of Jack & Jones clothing in the United States. The district court was correct to dismiss the third claim for common-law fraudulent misrepresentation, because Bestseller did not claim to have relied on Fame's supposedly false statement.

For these reasons, the judgment of the district court is affirmed in part and reversed in part.

*So ordered.*