Opinion for the Court filed by Senior Circuit Judge WILLIAMS.
Dissenting opinion filed by Chief Judge SENTELLE.
WILLIAMS, Senior Circuit Judge:
According to Scott Tooley’s complaint, he phoned Southwest Airlines in the spring of 2002 to buy tickets to fly to Nebraska to visit his family. At the end of the call, after Tooley had provided Southwest with his name and contact information, the airline representative asked Too-ley if he had any “comments, questions, or suggestions.” Compl. ¶ 18. Tooley responded that, in the wake of the September 11 attacks, Southwest should screen 100 percent of “everything,” and that without “proper security” Tooley and other members of the traveling public were “less safe due to the potential that those who wish to harm American citizens could put a bomb on a plane.” Compl. ¶¶ 19-20. The Southwest representative responded with alarm and declared “you said the ‘b’ word, you said the ‘b’ word.” Tooley Aff. ¶ 7. Tooley attempted to explain to the representative that she had not understood him correctly, but she nevertheless placed him on hold. After 20 minutes, Tooley finally hung up. Id.
According to Tooley, the ticket agent’s seeming paranoia was not the end of the matter. Other events followed, which he ascribes to various government officials; those remaining in the suit, after a partial dismissal by Tooley, are the United States Attorney General, the Secretary of the Department of Homeland Security, and the Administrator of the Transportation Security Administration, all sued solely in their official capacities (collectively, the “government”). See Tooley v. Bush, No. 06-306, 2006 WL 3783142, at *1 (D.D.C. 2006) (detailing the defendants initially included in Tooley’s complaint and his later dismissals).
Tooley claims that in the fall of 2003, more than a year after the call to Southwest, he began to notice problematic phone connections, including “telltale” intermittent clicking noises. Compl. ¶ 21. He alleges, “[u]pon information and belief,” that his telephone problems were caused by illegal wiretaps placed on his residential landline phone, his landline phone at his former residence, his cellular phone, his wife’s cellular phone, the phones of his father, brother, sister, and in-laws, and his family s phone in Lincoln, Nebraska, where relatives from “France made calls from France to the home, where Mr. Too-ley was visiting his mother for the week.” Id. ¶ 22. Tooley claims that these alleged wiretaps were placed in response to the comments he had made to Southwest’s representative.
In addition, he alleges that the government has placed him on “one or more terrorist watch lists” and that as a result he is “being illegally monitored by Defendants.” Id. ¶25. This illegal monitoring has allegedly taken various forms, including the placement of permanent “Radio Frequency Identification Tags” on Too-ley’s vehicle and improper detentions and searches at airports. Id. ¶¶ 23-24. Too-ley also claims, in an affidavit submitted to the district court, that in March of 2005, when then-President George W. Bush visited Louisville, Kentucky, where Tooley currently resides, “an officer in a Ford Crown Victoria sat out in front of [Too-ley’s] home for approximately six (6) hours a day” during the week leading up to and the week of President Bush’s visit. Tooley Aff. ¶ 19.
In order to obtain more information regarding this allegedly illegal surveillance, Tooley submitted several requests under *838 the Freedom of Information Act (“FOIA”), 5 U.S.C. § 552. See Tooley, 2006 WL 3783142, at *3-8 (detailing the various FOIA requests). After the requests failed to yield any information confirming his suspicions, Tooley filed the present case in the district court. Counts I and II charge Fourth Amendment and constitutional right to privacy violations, respectively; Count III claims a First Amendment violation on the theory that the government’s illegal surveillance had caused him to curtail his speech. Count IV sought declaratory relief under FOIA.
The district court granted the government’s motion for summary judgment on the FOIA count, Tooley, 2006 WL 3783142, at *21, and Tooley does not challenge that decision. As to Counts I through III, the government moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) on the ground that Tooley lacked Article III standing. The district court addressed the standing arguments by dividing Tooley’s allegations into three categories based on the character of the government’s alleged unlawful behavior— wiretapping; physical surveillance (including the claim that Defendants unlawfully placed a Radio Frequency Identification Tag on Tooley’s vehicle); and the unlawful placement of Tooley’s name on a terrorist watch list. Tooley, 2006 WL 3783142, at *22.
The court held that Tooley lacked Article III standing for both the wiretapping claims and physical surveillance claims. It reasoned that “it is altogether possible” that Tooley was the subject of “entirely lawful wiretaps placed by state or local law enforcement agencies” and that Tooley could not show that it was a federal agent responsible for any of his alleged physical surveillance. Id. at *23, 25.
As to Tooley’s being placed on terrorist watch lists, the court found Article III standing, but nonetheless dismissed Too-ley’s claim on the basis of another subject matter jurisdiction problem. Tooley, 2006 WL 3783142, at *26. Focusing solely on the Transportation Security Administration (“TSA”) watch lists, the court found, in reliance on 49 U.S.C. §§ 46110(a), (c), that such lists “are incorporated into Security Directives issued by TSA ... and Congress has vested exclusive jurisdiction to review such directives in the Court of Appeals.” Id.
Tooley now appeals the district court’s dismissals of Counts I through III, arguing that the district court improperly applied the “liberal requirements of notice pleading” and rested its conclusions “on a basic misreading of the Complaint.” Petr. Br. 2. Thin as Tooley’s claims appear, we agree and therefore reverse and remand the case.
To establish constitutional standing a plaintiff must show an injury in fact that is fairly traceable to the challenged conduct and that will likely be redressed by a favorable decision on the merits. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The burden on the plaintiff to show each element grows increasingly stringent at each successive stage of the litigation. Id. at 561, 112 S.Ct. 2130. At the pleading stage, Federal Rule of Civil Procedure 8(a) requires only “a short and plain statement of the claim showing that the pleader is entitled to relief,” from which it follows that “general factual allegations of injury resulting from the defendant’s conduct may suffice.” Lujan, 504 U.S. at 561, 112 S.Ct. 2130. At the summary judgment stage, by contrast, “the plaintiff can no longer rest on ... mere allegations” but must set forth specific facts by affidavit or other evidence. Id. (internal quotations omitted). In the ab *839 sence of district court resolution of disputed issues of material fact, we review a dismissal for lack of standing de novo. Muir v. Navy Fed. Credit Union, 529 F.3d 1100, 1105 (D.C.Cir.2008).
The Supreme Court’s decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), has produced some uncertainty as to exactly what is required of a plaintiff at the pleading stage. See Aktieselskabet AF 21. November 2001 v. Fame Jeans, 525 F.3d 8, 15 & n. 3 (D.C.Cir.2008) (gathering cases suggesting that courts “have disagreed about the import of Twombly ”). In Fame Jeans, however, we concluded that “Tiuombly leaves the longstanding fundamentals of notice pleading intact.” Id. at 15. Thus, we “must assume all the allegations of the complaint are true ... and ... must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged.” Id. at 17 (internal citations and quotations omitted). This liberal pleading standard requires a court to deny a motion to dismiss “even if it strikes a savvy judge that ... recovery is very remote and unlikely.” Twombly, 127 S.Ct. at 1965. So long as the pleadings suggest a “plausible” scenario to “sho[w] that the pleader is entitled to relief,” a court may not dismiss. Id. at 1966.
In finding that Tooley lacked standing, the district court delved into an examination of the merits of Tooley’s claim and found them wanting. For example, in evaluating Tooley’s wiretapping claim, the district court surmised that “Plaintiff has been the subject of entirely lawful wiretaps placed by state or local law enforcement agencies.” Tooley, 2006 WL 3783142, at *23. Injunctive relief, it reasoned, would be “ineffective if in fact, Plaintiff is the subject of wiretaps placed by someone other than federal officials or if there are actually no wiretaps.” Id. at *24. Similarly, in evaluating Tooley’s physical surveillance claims, the district court questioned whether the person Too-ley alleged was sitting in front of his house was a federal officer and whether the officer was there as a consequence of his phone conversation with Southwest. Id. at *23-24.
But at this stage of the litigation standing “in no way depends on the merits of the plaintiffs contention that particular conduct is illegal.” Warth v. Seldin, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). A plaintiff does not need to “prove that the agency action it attacks is unlawful”; otherwise “every unsuccessful plaintiff will have lacked standing in the first place.” Louisiana Energy & Power Auth. v. FERC, 141 F.3d 364, 368 (D.C.Cir.1998) (internal quotations omitted). Under our system’s undemanding pleading rules, the district court was required to accept Tooley’s factual allegations as true.
On appeal the government makes little attempt to defend the hypothetical scenarios that led the district court to conclude that Tooley’s alleged injuries may not have been caused by the defendants. Instead, the government argues that, even accepting Tooley’s factual allegations as true, they are “so insubstantial ... that they fail to ‘raise a right to relief above the speculative level.’ ” Appellees’ Br. 30 (quoting Twombly, 127 S.Ct. at 1965).
Specifically, the government argues that Tooley’s allegations are “no more substantial than the allegations this Court found inadequate to establish standing in United Presbyterian Church in the U.S.A. v. Reagan, 738 F.2d 1375 (D.C.Cir.1984).” Appellees’ Br. 34. In United Presbyteñan the plaintiffs challenged an executive order governing foreign intelligence and counterintelligence activities. United Presbyterian, 738 F.2d at 1377. We affirmed the dismissal of the claims because the plain *840 tiffs could not satisfy the injury-in-fact standing requirement. The plaintiffs had asserted that they were “currently subjected to unlawful surveillance” as evidenced by factual allegations that one plaintiff suffered from interrupted mail service and another from disruption of speaking engagements; but we found that “[m]ost, if not all, of the allegations on that score are in any event too generalized and nonspecific to support a complaint.” Id. at 1380.
While we share many of our dissenting colleague’s concerns over the ultimate plausibility of Tooley’s claims, his allegations are somewhat less generalized and self-contradictory than those of United Presbyterian. Especially when taken in combination, Tooley’s claims — -to have seen an officer sitting outside his home during a Presidential visit, to have heard supposed “telltale” phone clicks, and to be subject to searches every time he travels — create links to government surveillance that are more specific than the mere loss of mail. Further, although the temporal link between the precipitating event and the alleged surveillance may in Tooley’s case appear stretched nearly to the breaking point, in United Presbyterian time would have had to run backwards: “[M]any of the appellants allege unlawful activities directed against them before this executive order or either of its predecessors existed.” Id. at 1881 n. 3 (emphasis added). Thus, we think the two cases are distinguishable and that Tooley’s standing allegations meet the federal rules’ notoriously loose pleading criteria.
As to Tooley’s claim that the alleged surveillance “chilled” his speech in violation of the First Amendment, the government points to Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). There the Supreme Court held that the plaintiffs had not adequately presented a justiciable controversy because their decision to curtail their speech was based on a “subjective ‘chill,’ ” and not a claim of “specific present objective harm or a threat of specific future harm.” Id. at 13-14, 92 S.Ct. 2318. But in Laird the plaintiffs’ alleged self-censorship was “caused, not by any specific action of the Army against them, [but] only [by] the existence and operation of the intelligence gathering and distributing system.” Id. at 3, 92 S.Ct. 2318 (internal quotations omitted). Too-ley, in contrast, alleges harm from specific events, arguably linked to government conduct, that he says caused the chilling effect. Whether or not Tooley’s alleged harms amount to a First Amendment claim remains an open question, one which was not before the district court.
Finally, we turn to Tooley’s claim that he has been wrongfully placed on terrorist watch lists. The Complaint alleges that following Tooley’s conversation with Southwest in the spring of 2002, he has been “improperly detained and subjected to a strict search without any probable cause.” Compl. ¶ 24. His affidavit provides further details about these detentions and searches, which he claims occurred every time he traveled before filing this suit. Tooley Aff. ¶ 15. Specifically, Tooley alleges that in July 2004, he was subjected to a “degrading and unreasonable search” at Omaha’s Eppley Airfield. The district court concluded, and we affirm, that Tooley has established Article III standing on his watch list claims. Too-ley, 2006 WL 3783142, at *26.
But the district court’s conclusion that it lacked subject matter jurisdiction over the entirety of Tooley’s watch list claims was based on a misreading of the complaint. When analyzing Tooley’s claim that he was placed on “one or more terrorist watch lists,” Compl. ¶ 25, the district court focused only on TSA watch lists. It concluded that TSA watch lists are incorporated into security directives issued by TSA pur *841 suant to 49 U.S.C. § 114(Z )(2)(A) and that therefore the federal courts of appeals have exclusive jurisdiction over such watch lists pursuant to 49 U.S.C. §§ 46110(a), (c).[1]
We may assume for our purposes that the district court was correct insofar as TSA watch lists are concerned. But Too-ley’s complaint did not focus solely on watch lists maintained by the TSA. Though he mentions TSA watch lists numerous times in his pleadings, he also alleges that he has been placed on numerous watch lists and sought an injunction requiring “Defendants to remove his name from any and all watch lists that may indicate Plaintiff is associated with any terrorist activities or organizations.” Compl. 15 (emphasis added). As Tooley’s complaint should be liberally construed and the possibility exists that several government agencies apart from the TSA maintain watch lists, see Peter M. Shane, The Bureaucratic Due Process of Government Watch Lists, 75 Geo. Wash L.Rev. 804, 811 (2007) (discussing at least 12 terrorist or criminal watch lists maintained by the federal government), the district court erred in treating Tooley’s claim as if it had been confined to TSA watch lists.
We must therefore reverse. In regard to further proceedings, we note that once a plaintiff has overcome a standing challenge under our famously liberal pleading rules he is not automatically entitled to unlimited discovery. Federal Rule of Civil Procedure 26(b)(2) dictates that “the court must limit the frequency or extent of discovery ... if it determines that ... the burden or expense of the proposed discovery outweighs its likely benefit considering ... the importance of the issues at stake in the action.” Additionally, Federal Rule of Civil Procedure 56(f) states that where the party opposing a motion for summary judgment claims inability to “present facts essential to justify its opposition,” “the court may” order a continuance to permit discovery to occur, a highly discretionary power. See Donofrio v. Camp, 470 F.2d 428, 431-32 (D.C.Cir.1972) (“The rules governing discovery, including Fed.R.Civ.P. 56(f), are to be construed liberally to prevent injustice, but they do not require a trial judge to countenance repeated abuses of the discovery process or to let discovery go on indefinitely in a groundless suit.”). Moreover, discovery relating to national security may present exceptional problems, as in some contexts a pattern of government answers (denying specific conduct in some cases, refusing to answer on national security grounds in others) would constitute a de facto disclosure of information not formally disclosed. Cf. Bassiouni v. C.I.A, 392 F.3d 244, 246 (7th Cir.2004) (“When a pattern of responses itself reveals classified information, the only way to keep secrets is to maintain silence uniformly.”). And finally we observe that “[i]n most cases,” an assertion by the government that disclosure of “communications collections and analysis capabilities” would jeopardize the “intelligence collection mission” may be sufficient to foreclose discovery and sustain a claim of privilege. Halkin v. Helms, 598 F.2d 1, 9 (D.C.Cir.1978) (internal quotations omitted) (upholding, after an in camera examination, an assertion of the state secrets privilege with respect to the mere fact of interception of plaintiffs foreign communications).
For the reasons stated above the judgment of the district court on Counts I, II, and III is reversed and the case is

Remanded.

. The district court mistakenly cited to 48 U.S.C. § 46110, see Tooley, 2006 WL 3783142, at *26, though clearly referring to 49 U.S.C. § 46110.