# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 20, 2009       Decided May 26, 2009

No. 08-5189

PHILOMENA AFFUM,
DOING BUSINESS AS ASAFO MARKET,
APPELLANT

v.

UNITED STATES OF AMERICA AND
THOMAS J. VILSACK, SECRETARY OF AGRICULTURE,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00300)

*Charles B. Wayne* argued the cause and filed the briefs for appellant.

*R. Craig Lawrence*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Harry B. Roback*, Assistant U.S. Attorney.

Before: SENTELLE, *Chief Judge*, KAVANAUGH, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS*, Senior Circuit Judge*: The Food Stamp Act ("Act") prohibits retail stores from "trafficking" in food stamp benefits, or exchanging these benefits for cash. *See* 7 U.S.C. § 2021(b)(3)(B). The penalty for a first-time trafficking offense is permanent disqualification from the food stamp program. However, under the Act, the Secretary of Agriculture ("Secretary") has the discretion to impose a civil money penalty in lieu of disqualification when an offending store produces "substantial evidence" that it had an "effective policy and program" to prevent the trafficking violations. *Id.* Regulations promulgated by the Secretary set forth criteria for eligibility for a civil money penalty in lieu of permanent disqualification for trafficking. *See* 7 C.F.R. § 278.6(i).

In early 2007, a part-time employee working alone at appellant Philomena Affum's store exchanged a total of $30 in cash for $30 in electronic food stamp benefits offered by an undercover agent. The Department of Agriculture's Food and Nutrition Service ("FNS") then charged Affum with illegal trafficking. Affum requested that she be assessed a civil money penalty in lieu of permanent disqualification from the program. In November 2007, the FNS determined that Affum did not meet the regulatory criteria for the civil money penalty and permanently disqualified her store from the program. Affum then filed suit in the District Court, challenging the validity of the applicable regulations and seeking a "trial de novo" of the Secretary's penalty determination. *See* 7 U.S.C. § 2023(a)(15) ("The suit in the United States district court . . . shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue."). Affum submitted an affidavit affirming that her "store employee had been trained and that the employee knew that it was prohibited to . . . exchange cash for food stamp benefits," *Affum*

*v. United States*, 550 F. Supp. 2d 63, 67 (D.D.C. 2008), and sought a preliminary injunction to bar the permanent disqualification. In May 2008, the District Court denied Affum's request for injunctive relief on the ground that her "affidavit alone cannot be sufficient under the statute" to require the Secretary to impose a civil money penalty in lieu of disqualification. *Id*. The District Court further held that Affum lacked Article III standing to challenge the regulations. *Id.* at 68. At the parties' request, the District Court converted its denial of the injunction to a final judgment in the Secretary's favor. Affum then appealed.

We hold that the District Court was mistaken in its ruling that Affum lacked standing. The Secretary explicitly relied on the regulations to disqualify Affum from the food stamp program and to deny her request for the lesser civil money penalty. Therefore, Affum plainly has standing to challenge the regulations and their application to her case. Accordingly, we vacate the District Court's judgment and remand the case for further proceedings. The District Court must conduct a trial *de novo* on Affum's claim that the Secretary abused his discretion in denying her request for a civil money penalty in lieu of disqualification.

## I. BACKGROUND

### A. *Statutory and Regulatory Framework*

Congress created the food stamp program in 1964 to "permit those households with low incomes to receive a greater share of the Nation's food abundance." The Food Stamp Act of 1964, Pub. L. No. 88-525, § 2, 78 Stat. 703, 703. Retail stores authorized to participate in the program may accept food stamp benefits instead of cash for designated food items. 7 U.S.C. § 2013(a). The stores then redeem these benefits with the government for face value. *Id.* Today, the government delivers food stamp benefits via electronic benefit transfer cards. *Id.*

§ 2016(h). In 2008, Congress amended the Food Stamp Act, renaming it the Food and Nutrition Act and renaming the "food stamp program" the "supplemental nutrition assistance program," but it did not substantively change the statutory provisions at issue in this case. Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, § 4001, 122 Stat. 1651, 1853. We use the terms that the parties used in briefing this case.

Congress prohibits participating retail stores from "trafficking" in food stamp benefits, or trading these benefits for cash. Prior to 1988, the Act mandated permanent disqualification even for first-time trafficking offenders. *See* 7 U.S.C. § 2021(b)(3) (1982). Because of the severity of the sanction, the courts divided over whether "innocent" store owners could be held liable when their employees committed trafficking violations without their knowledge. *See Ghattas v. United States*, 40 F.3d 281, 283 (8th Cir. 1994) (describing circuit split). In 1988, Congress amended the Act to give the Secretary "the discretion to impose a civil money penalty" in lieu of permanent disqualification if the Secretary determined that there was "substantial evidence" that the store had "an effective policy and program in effect to prevent violations of the Act and the regulations." Hunger Prevention Act of 1988, Pub. L. No. 100-435, § 344, 102 Stat. 1645, 1664 (codified as amended at 7 U.S.C. § 2021(b)(3)(B)); *see also* H.R. REP. NO. 100-828, pt. 1, at 28 (1988) (noting that "[u]nder current law, no discretion is provided to the Secretary of Agriculture to evaluate a store's actions to prevent [trafficking] violations" and the amended Act "provides this discretion"). In 1990, Congress amended the Act again to permit the Secretary to consider evidence that the store's ownership was not in any way involved in the trafficking. Food, Agriculture, Conservation, and Trade Act of 1990, Pub. L. No. 101-624, § 1743, 104 Stat. 3359, 3795 (codified as amended at 7 U.S.C. § 2021(b)(3)(B)).

With these and other amendments, § 2021(b)(3)(B) of the Act now provides for permanent disqualification upon the first instance of trafficking, "except that the Secretary shall have the discretion to impose a civil penalty" in lieu of disqualification in appropriate circumstances.  7 U.S.C. § 2021(b)(3)(B) (the statutory provision is reprinted in a Statutory Appendix at the end of this opinion).  The Act further mandates that a store owner who sells a store that was previously disqualified by the Secretary will remain personally disqualified from the program.  *Id.* § 2021(e)(1).  Finally, the Act permits a store owner who is aggrieved by the Secretary's decision in a food stamp trafficking case to file suit in district court.  *Id.* § 2023(a)(13).  The statute provides that such a suit "shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue."  *Id.* § 2023(a)(15); *see also id.* § 2021(c)(2) ("The action of disqualification or the imposition of a civil penalty shall be subject to review as provided in section 2023 of this title.").

The Act gives the Secretary the authority to "issue such regulations . . . as . . . deem[ed] necessary or appropriate for the effective and efficient administration" of the food stamp program.  7 U.S.C. § 2013(c); *see also id.* § 2021(a)(2).  Pursuant to this directive, the Secretary has promulgated regulations that amplify the Act's requirements and penalties relating to trafficking violations.  *See* 7 C.F.R. § 278.6.  The current regulations contain four criteria that the FNS considers in determining whether to impose a civil money penalty in lieu of permanent disqualification. *See id.* § 278.6(i).  *First*, the store "shall have developed an effective compliance policy."  *Id. Second*, the store "shall establish that both its compliance policy and program were in operation at the location where the violation(s) occurred *prior* to the occurrence of violations cited in the charge letter sent to the firm."  *Id. Third*, the store must show that it "had developed and instituted an effective personnel training program."  *Id. Fourth*, the store's ownership must show

that it was "not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of" the trafficking violations. *Id.* The regulations state that, to qualify for the alternative civil money penalty, a store "shall, at a minimum, establish by substantial evidence its fulfillment of" each criterion. *Id.*

The regulations also specify that, "in determining whether a firm has established an effective policy to prevent violations, FNS shall consider written and dated statements of firm policy which reflect a commitment to ensure that the firm is operated in a manner consistent" with the regulations. *Id.* § 278.6(i)(1). The regulations further direct that a store "shall document its training activity by submitting to FNS its dated training curricula and records of dates training sessions were conducted." *Id.* § 278.6(i)(2). "In addition, in evaluating the effectiveness of the firm's policy and program to ensure FSP [Food Stamp Program] compliance and to prevent FSP [Food Stamp Program] violations, FNS may consider . . . [a]ny other information the firm may present to FNS for consideration." *Id.* § 278.6(i)(1)(vi).

**B.** *Facts and Proceedings Below*

From 2006 to 2008, Affum owned and operated the Asafo Market, a small grocery store located in Northeast Washington, D.C. She ran the store with the help of one part-time employee. In August 2006, the FNS authorized the Asafo Market to accept food stamp benefits. *See* Store Contact Record, *reprinted in* Joint Appendix ("J.A.") 126-27. At the time of the authorization, the FNS advised Affum that trafficking was prohibited and provided her with a training brochure for participating retailers as well as 70 pages from the Code of Federal Regulations that described the rules of the food stamp program. *See id.*; *see also* Affum Aff. ¶¶ 6-7 (Mar. 20, 2008), J.A. 70-71.

On October 10, 2007, the FNS sent Affum a letter charging her with trafficking in food stamp benefits. Letter from Sarah Duncan, Officer-in-Charge, Towson Field Office, to Philomena Affum 1 (Oct. 10, 2007) [hereinafter Charge Letter], J.A. 72. The Charge Letter and the enclosed investigative report stated that on two occasions between February and April 2007, an FNS investigator entered the Asafo Market and exchanged a total of $30 in electronic food stamp benefits for $30 in cash. *Id.*; *see also* Report of Positive Investigation (Apr. 30, 2007), J.A. 76. The Charge Letter also warned Affum that the penalty for this conduct was permanent disqualification from the food stamp program or, if appropriate, a civil money penalty. Charge Letter at 1-2, J.A. 72-73. Referencing § 278.6(i) of the regulations, the Charge Letter further informed Affum that she had 10 days in which to request the lesser sanction and that she "must meet each of the four (04) criteria listed [in § 278.6(i)] and . . . provide the documentation as specified" in order to be eligible for the civil money penalty. *Id.* at 2, J.A. 73.

On November 5, 2007, Affum met with Sarah Duncan, the Officer-in-Charge in the FNS's Towson Field Office, to discuss the charges. Affum explained that her employee had conducted the prohibited transactions without her knowledge and "knew this was against the rules." Memorandum from Sally Duncan, Officer-in-Charge, Towson Field Office, to File (Nov. 5, 2007), J.A. 175.

On November 14, 2007, the FNS informed Affum by letter of its finding that the trafficking violations had occurred. Letter from Sarah Duncan, Officer-in-Charge, Towson Field Office, to Philomena Affum 1 (Nov. 14, 2007) [hereinafter Decision Letter], J.A. 112. The Decision Letter further stated that Affum was ineligible for the alternative civil money penalty under § 278.6(i) of the regulations, because she "failed to submit sufficient evidence to demonstrate that [her] firm had established and implemented an effective compliance policy and

program to prevent violations of the Food Stamp Program." *Id.* Pursuant to this finding, the FNS permanently disqualified the Asafo Market from the program. *Id.* (citing 7 C.F.R. § 278.6(c), (e)(1)).

Affum sought review of the disqualification decision and advised the agency's Administrative Review Branch that the employee "who was responsible for this great error was informed from the very beginning that [electronic food stamp benefits were] strictly for use with food items only and nothing else." Letter from Philomena Affum to Jerry A. Masefield, FNS, Administrative Review Branch 1 (Dec. 26, 2007), J.A. 116. On January 22, 2008, an Administrative Review Officer within the FNS concluded that the "violations at issue did, in fact, occur as charged" and "sustained" the permanent disqualification. *Asafo Market v. Towson, Md. Field Office*, Case No. C0113519 at 4 (Jan. 22, 2008) [hereinafter Final Agency Decision], J.A. 122. The Final Agency Decision did not specifically address Affum's request for a civil money penalty in lieu of disqualification, so the Decision Letter is the agency's last word on this issue.

On February 21, 2008, Affum filed suit in the District Court against the Secretary and the United States. She did not dispute that the trafficking violations occurred, but she requested a "trial de novo" of the Secretary's penalty determination pursuant to § 2023(a)(15) of the Act. Compl. ¶¶ 33, 40. In addition, she argued that the permanent disqualification should be overturned because the Secretary failed to give her and other small store owners fair notice of his interpretation of the eligibility criteria for the civil money penalty contained in § 278.6(i) of the regulations and because these regulations are contrary to the language of the Act, arbitrary and capricious, and violative of her Fifth Amendment substantive due process rights. *Id.* ¶¶ 43-45.

On March 20, 2008, Affum filed a motion for a preliminary injunction to bar the permanent disqualification. She attached an affidavit to her motion affirming that she had told the FNS Officer-in-Charge that the employee who committed the trafficking "had been trained and that the employee knew that it was prohibited to . . . exchange cash for food stamp benefits." Affum Aff. ¶ 4 (Mar. 20, 2008), J.A. 70.

On May 7, 2008, the District Court denied Affum's request for injunctive relief. *Affum*, 550 F. Supp. 2d at 64. The District Court found that Affum could not succeed on the merits of her suit because she had not submitted "substantial evidence" of an effective anti-trafficking program as required by § 2021(b)(3)(B) of the Act. *Id.* at 67-68. On this point, the District Court concluded that Affum's "affidavit alone cannot be sufficient under the statute because [s]tore owners cannot simply attest to having effective antifraud programs; rather they must prove it." *Id.* at 67 (alteration in original) (internal quotation marks and citation omitted).

The District Court then went on to hold that Affum had no standing to challenge the regulations, because the statute was the cause of her injury. *Id.* at 68. The District Court explained that,

> [a]ssuming arguendo that the regulations did suffer from one or more of th[e] deficiencies [alleged by Affum], plaintiff would have no standing to challenge them because they inflict no redressable injury upon her. Regardless of whether the regulations are enforceable, the statute itself, which plaintiff does not challenge, inflicts the injury upon plaintiff of which she complains. Hence, plaintiff has no standing to assert her challenge to the Secretary's regulations and she has virtually no likelihood of success on the merits of such a claim.

*Id.* (internal citations and footnote omitted).

Following the District Court's denial of Affum's motion for a preliminary injunction, the parties jointly moved to have the District Court convert its May 7 opinion into a final judgment. On June 12, 2008, the District Court granted the parties' joint motion. *Affum v. United States*, No. 1:08-cv-00300 (D.D.C. June 12, 2008) (Order), J.A. 41.

Affum appealed the District Court's judgment on June 19, 2008. Shortly thereafter, she closed the Asafo Market due to loss of revenue from the food stamp program. Affum Aff. ¶ 3 (Nov. 22, 2008). The case is not moot, however, because the Government maintains that Affum remains personally disqualified from the food stamp program. *See* Appellees' Br. at 12 n.2.

## II. ANALYSIS

Affum raises several challenges to the District Court's decision. She argues first that the District Court erred in holding that she had no Article III standing to challenge the Secretary's regulations and their application to her case. In addition, she contends that she should not face permanent disqualification from the program because (1) her affidavit was "substantial evidence" of the anti-trafficking program at the Asafo Market; (2) the Secretary did not give fair notice to her and other small store owners of his construction of the eligibility criteria in the regulations governing the imposition of a civil money penalty in lieu of disqualification; and (3) § 278.6(i) of the regulations is contrary to the Act, arbitrary and capricious, and violative of her Fifth Amendment substantive due process rights.

### A. *Standing*

In its brief, the Government urged this court to affirm the District Court's decision that Affum lacked Article III standing to challenge the Secretary's regulations. Appellees' Br. at 26; *Affum*, 550 F. Supp. 2d at 68. However, when pressed on this issue at oral argument, counsel for the Government stated,

"That's not the argument we're advancing here today." Recording of Oral Argument 20:37-20:40 (Feb. 20, 2009). The Government's change in position was hardly surprising, because Affum plainly has standing to pursue her challenge to the disputed regulations and their application to her case.

We review *de novo* the District Court's decision on standing. *See Tooley v. Napolitano*, 556 F.3d 836, 838-39 (D.C. Cir. 2009). The "irreducible constitutional minimum of standing contains three elements": (1) injury-in-fact; (2) causation; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). As we explained in *Sierra Club v. EPA*, 292 F.3d 895 (D.C. Cir. 2002), "[i]n many if not most cases the petitioner's standing to seek review of administrative action is self-evident," particularly where "the complainant is 'an object of the action (or forgone action) at issue.'" *Id.* at 899-900 (quoting *Defenders of Wildlife*, 504 U.S. at 561). Affum's standing to challenge the regulations is self-evident in this case. By relying on § 278.6(i) to disqualify the Asafo Market from the revenue-producing food stamp program, the Secretary inflicted a concrete injury on Affum that could be remedied by an invalidation of the regulations and a reduction in penalty to the alternative civil money sanction. *See* Decision Letter at 1 (citing 7 C.F.R. § 278.6(i) to conclude that Affum was not "e[l]igible for the CMP [Civil Money Penalty] because [she] failed to submit sufficient evidence that [her] firm had established and implemented an effective compliance policy and program"), J.A. 112.

When an agency enforces its regulations to disqualify an individual from a government program, it is commonplace that the agency's enforcement action gives rise to an Article III injury sufficient to permit the regulated party to challenge the regulations at issue. *See, e.g.*, *Gorman v. NTSB*, 558 F.3d 580, 587-91 (D.C. Cir. 2009) (reviewing challenge to regulations relied on by the National Transportation Safety Board and the

Federal Aviation Administration to revoke petitioner's commercial pilot certificate); *PMD Produce Brokerage Corp. v. USDA,* 234 F.3d 48, 50, 51-54 (D.C. Cir. 2000) (reviewing fair notice challenge to procedural regulations relied on by the Secretary to revoke petitioner's license as a dealer of perishable agricultural products). Affum likewise has standing to pursue her challenge to the regulations at issue here and to the Secretary's application of them to permanently disqualify her from the food stamp program.

**B.** *The District Court's Judgment Must Be Vacated and the Case Remanded for a Trial* **De Novo**

When the District Court ruled that Affum lacked standing to challenge the Secretary's regulatory scheme, it foreclosed Affum's statutory right to have "a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15). The District Court made two mistakes. First, the court decided that Affum was entitled to no relief because she failed to comply with "the *statutory* language governing eligibility for a civil monetary penalty." *Affum*, 550 F. Supp. 2d at 67 (emphasis added). As noted above, however, the agency rested on the Secretary's *regulations* in declining to impose a civil money penalty in lieu of disqualification. The agency's Decision Letter specifically stated that Affum was ineligible for the alternative civil money penalty because she failed to comply with § 278.6(i) of the regulations. Decision Letter at 1, J.A. 112. The District Court was required to "judge the propriety of [the agency's] action solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Second, the statute plainly says that a claimant is entitled to a "trial de novo" on "the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15). The District Court never conducted the required trial *de novo* once it ruled that Affum lacked standing. The District Court simply ruled that Affum had no claim on the

merits because, in the trial court's view, her "affidavit alone cannot be sufficient *under the statute*" to avoid permanent disqualification. *Affum*, 550 F. Supp. 2d at 67 (emphasis added). However, this ruling does not join with the regulatory challenges raised by Affum.

Because of its mistaken view on standing, the District Court never addressed the principal issues in this case which concern the Secretary's regulations and their disputed application to Affum. Accordingly, we must vacate the District Court's judgment and remand the case for the District Court to consider the propriety of the Secretary's choice of sanction and to permit Affum to pursue her challenges to the validity of the regulations as applied to her.

**C. *Issues on Remand***

The parties have raised several additional issues – relating to the applicable standard controlling the trial court's review of the agency's action, the substantial evidence requirement, and fair notice – all of which must be addressed by the District Court on remand. "Although we recognize that factual determinations must be made by the District Court, 'we can provide some guidance for the task to be tackled on remand.'" *Berry v. District of Columbia*, 833 F.2d 1031, 1034 (D.C. Cir. 1987) (quoting *Nat'l Fed'n of Fed. Employees v. Weinberger*, 818 F.2d 935, 942 (D.C. Cir. 1987)). We address these additional issues only to ensure that the District Court will "apply the correct legal standard[s] in its factfinding on remand." *In re Sealed Case*, 552 F.3d 841, 845 (D.C. Cir. 2009).

1. *The Applicable Standards Governing Judicial Review of the Secretary's Actions*

The relevant statutory provisions governing judicial review of actions taken by the Secretary are both unusual and complicated. The controlling provisions, which are reprinted in the attached Statutory Appendix, are found in 7 U.S.C. § 2021

and 7 U.S.C. § 2023. The Government contends that, under the relevant provisions of the Act, the Secretary's determination whether to impose permanent disqualification or a civil money penalty is subject to only limited review under the deferential arbitrary and capricious standard. Appellees' Br. at 12-16; *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (explaining arbitrary and capricious review).

As can be seen from the terms of the statute reprinted in the Statutory Appendix, when the District Court reviews actions taken by the Secretary in a trafficking case, there "shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15). However, the statute also provides that the Secretary "shall have the discretion to impose a civil penalty . . . in lieu of disqualification . . . if the Secretary determines that there is substantial evidence that such store or food concern had an effective policy and program in effect to prevent violations of the chapter and the regulations." *Id.* § 2021(b)(3)(B). The question here is whether the trial *de novo* provided for by § 2023(a)(15) applies only to the Secretary's conclusion that a trafficking violation occurred, or whether it applies as well to the Secretary's choice of the appropriate penalty for that violation.

Reading the statute as a whole, it is inescapable that the trial court is required to conduct a trial *de novo* in all regulatory enforcement cases involving charges of trafficking violations. Section 2021(c) is entitled "Civil penalty and review of disqualification and penalty determinations," and it states that judicial review may address either "[t]he action of disqualification or the imposition of a civil penalty . . . as provided in section 2023." *Id.* § 2021(c)(2). Section 2023(a)(15), in turn, states that "[t]he suit in the United States district court . . . shall be a trial de novo by the court in which

the court shall determine the validity of the questioned administrative action in issue." *Id.* § 2023(a)(15). There is nothing in the Act to suggest that trials *de novo* relating to "administrative action[s] in issue" are limited solely to review of determinations that a trafficking violation occurred.

"A trial de novo is a trial which is not limited to the administrative record – the plaintiff 'may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency.'" *Kim v. United States*, 121 F.3d 1269, 1272 (9th Cir. 1997) (quoting *Redmond v. United States*, 507 F.2d 1007, 1011-12 (5th Cir. 1975)); *see also Freedman v. USDA*, 926 F.2d 252, 261 (3d Cir. 1991) ("The court must reach its own factual and legal conclusions and is not limited to matters considered in the administrative proceedings."). The trial *de novo* provision of the Act "is clearly broader than the review standard provided for under the Administrative Procedure Act. It requires the district court to examine the entire range of issues raised, and not merely to determine whether the administrative findings are supported by substantial evidence." *Modica v. United States*, 518 F.2d 374, 376 (5th Cir. 1975). However, the statutory requirement of a trial *de novo* "is compatible with a summary judgment disposition if there are no material facts in dispute." *Freedman*, 926 F.2d at 261.

There is a question here as to whether "trial de novo" under § 2023(a)(15) always means "*de novo* review." We think not. Reading § 2021(b)(3)(B), § 2021(c)(2), and § 2023(a)(15) together, and considering the statutory scheme as a whole, we think that Congress meant to impose different standards of review for a judicial action challenging the agency's finding of a violation as opposed to a judicial action challenging the Secretary's choice of penalty. It seems clear under the statute that Congress intended district courts to conduct a trial *de novo* and engage in *de novo* review to determine whether a trafficking

violation occurred. The parties do not dispute this point. But the situation is different when an aggrieved party challenges the Secretary's failure to impose a civil money penalty in lieu of disqualification. In this latter situation, the trial court must still conduct a trial *de novo* as required by § 2023(a)(15) to determine the facts on which the sanction was predicated. However, the terms of the Act indicate that a trial court may only overturn the agency's choice of penalty if, on the *de novo* factual record, it is determined that the Secretary abused his discretion in declining to impose a civil money penalty in lieu of disqualification.

As noted above, Congress amended the Act in 1988 to give the Secretary "the discretion to impose a civil money penalty" on certain store owners innocent of their employees' trafficking offenses. Hunger Prevention Act of 1988, Pub. L. No. 100-435, § 344, 102 Stat. 1645, 1664 (codified as amended at 7 U.S.C. § 2021(b)(3)(B)); *see also* H.R. REP. NO. 100-828, pt. 1, at 28 (1988). Because we must presume that "[w]hen Congress acts to amend a statute, . . . it intends its amendment to have real and substantial effect," *Stone v. INS*, 514 U.S. 386, 397 (1995), Congress' insertion of the "discretion" provision into § 2021(b) indicates that it intended for trial courts to assess whether the Secretary abused this "discretion" in selecting the appropriate penalty. Had Congress intended instead for trial courts to choose anew an appropriate penalty in trafficking cases, it would have made little sense for it to amend the Act to place this decision within the Secretary's discretion. To give full effect to § 2021(b)(3)(B), we hold that *review* of the Secretary's choice of penalty is subject to the abuse of discretion standard. A complaining party is still entitled to a trial *de novo* to create a factual record on the Secretary's determination not to a impose a civil money penalty in lieu of disqualification, and judicial review of the Secretary's choice of penalty is based on that *de novo* record. But the controlling standard of review is abuse of discretion.

Under the applicable standard of review, the Secretary abuses his discretion in his choice of a penalty if his decision is either "unwarranted in law" or "without justification in fact," *Coosemans Specialties, Inc. v. USDA*, 482 F.3d 560, 566 (D.C. Cir. 2007) (quoting *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185-86 (1973)) (other citation omitted), or is "arbitrary" or "capricious," *see Norinsberg Corp. v. USDA*, 47 F.3d 1224, 1228 (D.C. Cir. 1995). A court will not lightly disturb an agency's choice of penalty under a statute committed to its enforcement. *See*, *e.g*., *Kleiman & Hochberg, Inc. v. USDA*, 497 F.3d 681, 690 (D.C. Cir. 2007) (explaining that a court must respect the agency's superior knowledge of the industry that it regulates). However, an agency's choice of sanction will not survive review even under a deferential arbitrary and capricious or abuse of discretion standard if it is not justified. *See, e.g.*, *Morall v. DEA*, 412 F.3d 165, 181-84 (D.C. Cir. 2005). Thus, in a case such as this, the District Court obviously must consider, *inter alia*, whether the Secretary reasonably weighed the statutory factors listed in § 2021(b)(3)(B), (B)(i), (B)(ii)(I), and (B)(ii)(II) and reasonably applied any lawful regulations adopted pursuant to § 2013(c) and § 2021(a)(2) ("[r]egulations promulgated under this chapter shall provide criteria for the finding of a violation of, the suspension or disqualification of and the assessment of a civil penalty against a retail food store") in denying Affum's request for a civil money penalty in lieu of disqualification.

In reviewing challenges under the Act, a number of our sister circuits also distinguish between challenges to a finding of a violation and challenges to the severity of the penalty. These circuits subscribe to the view that we have enunciated here, *i.e.*, that judicial review of the agency's choice of penalty is focused on whether the Secretary has abused his discretion. *See, e.g.*, *Cross v. United States*, 512 F.2d 1212, 1218 (4th Cir. 1975) (en banc) (holding that "only in those instances in which it may be fairly said on the *de novo* record as a whole that the Secretary,

acting through his designates, has abused his discretion by acting arbitrarily or capriciously, would the district court be warranted in exercising its authority to modify the penalty"); *see also Vasudeva v. United States*, 214 F.3d 1155, 1159-61 (9th Cir. 2000); *Corder v. United States*, 107 F.3d 595, 598 (8th Cir. 1997); *Carlson v. United States*, 879 F.2d 261, 263 (7th Cir. 1989); *Wong v. United States*, 859 F.2d 129, 132 (9th Cir. 1988). *But see Bakal Bros., Inc. v. United States,* 105 F.3d 1085, 1089 (6th Cir. 1997) (suggesting that the agency's determination of the appropriate sanction is not open to judicial review). It appears that only the Eighth Circuit has held that the Secretary's choice of sanction is subject to *de novo* review. *Ghattas*, 40 F.3d at 286-87. In *Ghattas*, however, the Eighth Circuit based its analysis exclusively on § 2023(a)(15) and thus gave no effect to the language added to § 2021(b) by the 1988 amendment that vested the Secretary with the "discretion to impose a civil money penalty." Hunger Prevention Act of 1988, Pub. L. No. 100-435, § 344, 102 Stat. 1645, 1664 (codified as amended at 7 U.S.C. § 2021(b)(3)(B)); *Ghattas*, 40 F.3d at 286-87. But reading the provisions together, as we must, makes clear that § 2021(b)(3)(B) is best understood as reflecting Congress' expectation that, after conducting a trial *de novo*, trial courts would assess whether the Secretary abused this "discretion" in selecting the appropriate sanction.

2.   *The Substantial Evidence Requirement and Fair Notice*

Affum contends that the District Court erred in holding that her affidavit was not "substantial evidence" of an effective anti-trafficking program under § 2021(b)(3)(B) of the Act. We agree that the District Court appears to have rested its analysis on a misconception of the term "substantial evidence."

The District Court held that Affum's "affidavit alone" was not substantial evidence of an effective anti-trafficking program "under the statute because [s]tore owners cannot simply attest to having effective antifraud programs; rather they must prove it."

*Affum*, 550 F. Supp. 2d at 67 (alteration in original) (internal quotation marks and citation omitted). The District Court went on to explain that an affidavit could not qualify as sufficient evidence of an effective program because "then all store owners would simply declare that they had told their employees that trafficking was prohibited, and all owners would be eligible for a civil money penalty." *Id.* In other words, the District Court was apparently of the view that a store owner's affidavit, without "any additional proof," could *never* amount to substantial evidence of an effective anti-trafficking program. *Id.* The problem with this analysis is that it confuses the form of evidence necessary to show an effective compliance program with the content of that evidence.

As we have explained, "[s]ubstantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Butler v. Barnhart,* 353 F.3d 992, 999 (D.C. Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The term "means more than a 'scintilla,' but less than a preponderance of the evidence." *Wis. Power & Light Co. v. FERC*, 363 F.3d 453, 461 (D.C. Cir. 2004) (quoting *Burns v. Dir., Office of Workers' Comp. Programs*, 41 F.3d 1555, 1562 n.10 (D.C. Cir. 1994)). In its common usage, the term "substantial evidence" in § 2021(b)(3)(B) thus says nothing about the particular forms of evidence that a store owner may use to demonstrate her eligibility for a civil money penalty.

Furthermore, as counsel for the Government conceded at oral argument, the regulations implementing the statute are "flexibl[e]" and similarly do not limit a store owner in the forms of evidence that she may submit to the agency. Recording of Oral Argument 28:27; *see also id.* at 28:29-28:39 ("[The regulations] are not so rigid that unless you file . . . something that is explicitly one, two, three, four, and no variance, you lose."); *id.* at 33:54-33:58 ("I don't think, for example, that the program has to be written."). A store owner such as Affum may

thus attempt to show that she qualifies for the alternative sanction via an affidavit, oral testimony, documents, or other forms of evidence as may be appropriate in a given case.

As to the content of the evidence, the heart of Affum's claim is that, because the Secretary failed to give her and other small store owners fair notice of his interpretation of the eligibility criteria in § 278.6(i) of the regulations, she had no reason to assume that she was required to maintain a written policy and contemporaneous written documentation of her training. We have held that "'[t]raditional concepts of due process incorporated into administrative law preclude an agency from penalizing a private party for violating a rule without first providing adequate notice of the substance of the rule.'" *PMD Produce Brokerage Corp.*, 234 F.3d at 52 (quoting *Satellite Broad. Co., Inc. v. FCC*, 824 F.2d 1, 3 (D.C. Cir. 1987)). We "thus ask whether 'by reviewing the regulations and other public statements issued by the agency, a regulated party acting in good faith would be able to identify, with ascertainable certainty, the standards with which the agency expects parties to conform.'" *Trinity Broad. of Fla., Inc. v. FCC*, 211 F.3d 618, 628 (D.C. Cir. 2000) (quoting *Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995)). Here, the question is whether the Secretary's regulations and other statements about the rules of the food stamp program gave Affum fair warning that she was required to submit any further evidence than her letter, Letter from Philomena Affum to Jerry A. Masefield, FNS, Administrative Review Branch 1 (Dec. 26, 2007), J.A. 116, and affidavit affirming that her "employee had been trained and that the employee knew that it was prohibited to . . . exchange cash for food stamp benefits," Affum Aff. ¶ 4 (Mar. 20, 2008), J.A. 70.

We leave the resolution of the fair notice issue to the District Court in the first instance. We note, however, that the existing record raises serious issues as to the adequacy of the notice provided to Affum. The Government argued in its brief that the

regulations *require* that store owners maintain a written policy and contemporaneous written documentation of training given to employees. Appellees' Br. at 26-30. But the regulations do not appear to support these assertions, for they do not say that store owners *must* have a written policy or maintain contemporaneous written documentation of training activity. And the agency's training brochure provided to store owners does not say that a written policy or contemporaneous written documentation of a training program is required. The brochure simply instructs owners that "[i]t is a good idea to document the training you provide for your employees." FOOD & NUTRITION SERV., U.S. DEP'T OF AGRIC., THE FOOD STAMP PROGRAM: TRAINING GUIDE FOR RETAILERS 8 (2005), J.A. 91. Moreover, at oral argument, counsel for the Government acknowledged that the regulations are "flexibl[e]" and do not require owners to maintain "written" materials. Recording of Oral Argument 28:27, 33:54-33:58.

The Government suggests that allowing a store owner to obtain the civil money penalty without a written policy or contemporaneous written documentation of training activity might lead to abuse by regulated parties. Even if this is true, it does not justify the agency's failure to give notice to regulated parties that a written policy and contemporaneous written documentation are required. The agency's confused and poorly drafted regulations do not appear to give such notice. Furthermore, the agency need not accept a store owner's claim that it had an oral policy and training if, for example, the agency reasonably concludes that a store owner is not telling the truth. Here, if the agency had concluded that Affum was lying about having instructed her store clerk not to exchange cash for food stamp benefits, there would be little basis for finding that the agency abused its discretion in denying her the civil money penalty.

As this case illustrates, it is surely better as a practical matter for a store owner to maintain a written policy and written

documentation of training. A written policy will strengthen an owner's evidentiary presentation and allow her to more convincingly argue for a civil money penalty instead of disqualification. Indeed, the regulations appear to create something of a safe harbor for store owners with a written policy and contemporaneous written documentation of training activity. *See* 7 C.F.R. § 278.6(i)(1), (2). But the Government has pointed to nothing in the existing regulations that require those steps as a necessary condition for obtaining a civil money penalty.

To be sure, in one place the regulations say that the store owner "shall document" its training activity by submitting to the FNS a record of the employee's dates of employment and the dates of training. *Id.* § 278.6(i)(2). But contrary to the Government's argument, this regulation merely requires a store owner's creation of a written document during the agency's inquiry into a possible violation, not contemporaneously with any training. And Affum of course produced such a written document in the form of a letter to the agency and later an affidavit to the District Court. *See* Letter from Philomena Affum to Jerry A. Masefield, FNS, Administrative Review Branch 1 (Dec. 26, 2007), J.A. 116; Affum Aff. (Mar. 20, 2008), J.A. 69-71.

We do not mean to suggest that the Secretary cannot impose rigorous requirements on store owners seeking a civil money penalty. Indeed, as one of our sister circuits has noted:

> That Congress amended the Act in 1988 to provide for sanctions less severe than permanent disqualification for innocent store owners who have in place an effective policy to prevent trafficking violations leads ineluctably to the conclusion that innocent store owners whose stores lack such a policy remain subject to permanent disqualification. Every court that has addressed the issue has so held.

*Kim*, 121 F.3d at 1273. But Affum does not contest that innocent store owners whose stores lack an effective compliance policy and training program remain subject to permanent disqualification. Rather, she has made one principal argument in this case. She says she expressly told the store clerk from the beginning that it was impermissible to exchange cash for food stamp benefits. She submitted a written letter to the agency (and later an affidavit to the District Court) setting forth this account. If Affum's account is truthful, then it would appear that she maintained an effective policy and training program as required by the existing regulations. The Government has never suggested that Affum's account is false. Rather, the Government's argument rests on the ground that Affum did not maintain a written policy or contemporaneous written documentation of training activity – requirements that the regulations do not appear to impose.

On remand, the District Court must conduct the required trial *de novo*. The District Court must then determine whether, on the basis of the *de novo* factual record, the agency's disqualification of Affum was an abuse of discretion. In deciding this issue, the District Court must determine whether the regulations gave Affum fair notice that she was required to maintain a written policy and contemporaneous written documentation of her training, and, if not, whether the agency offered any legitimate alternative ground for denying Affum the civil money penalty instead of disqualification.

### III. CONCLUSION

The District Court's judgment is vacated and the case is remanded for further proceedings consistent with this opinion.

**STATUTORY APPENDIX**

**7 U.S.C. § 2021**

(a)  Disqualification

(1)  In general

An approved retail food store or wholesale food concern that violates a provision of this chapter or a regulation under this chapter may be–

(A)  disqualified for a specified period of time from further participation in the supplemental nutrition assistance program;

(B)  assessed a civil penalty of up to $100,000 for each violation; or

(C)  both.

(2)  Regulations

Regulations promulgated under this chapter shall provide criteria for the finding of a violation of, the suspension or disqualification of and the assessment of a civil penalty against a retail food store or wholesale food concern on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, or evidence obtained through a transaction report under an electronic benefit transfer system.

(b)  Period of disqualification

. . . a disqualification under subsection (a) of this section shall be–

. . . .

(3)  permanent upon–

. . . .

(B) the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store or wholesale food concern or a finding of the unauthorized redemption, use, transfer, acquisition, alteration, or possession of EBT cards, except that the Secretary shall have the discretion to impose a civil penalty of up to $20,000 for each violation . . . in lieu of disqualification . . . if the Secretary determines that there is substantial evidence that such store or food concern had an effective policy and program in effect to prevent violations of the chapter and the regulations, including evidence that–

(i) the ownership of the store or food concern was not aware of, did not approve of, did not benefit from, and was not involved in the conduct of the violation; and

(ii) (I) the management of the store or food concern was not aware of, did not approve of, did not benefit from, and was not involved in the conduct of the violation; or

(II) the management was aware of, approved of, benefited from, or was involved in the conduct of no more than 1 previous violation by the store or food concern; . . .

. . . .

(c) Civil penalty and review of disqualification and penalty determinations

(1) Civil penalty

In addition to a disqualification under this section, the Secretary may assess a civil penalty in an amount not to exceed $100,000 for each violation.

(2) Review

> The action of disqualification or the imposition of a civil penalty shall be subject to review as provided in section 2023 of this title.

**7 U.S.C. § 2023**

(a)(1) Whenever . . . a retail food store or wholesale food concern is disqualified or subjected to a civil money penalty under the provisions of section 2021 of this title . . . .

  . . . .

(13) If the store . . . feels aggrieved by such final determination, it may obtain judicial review thereof by filing a complaint against the United States in the United States court for the district in which it resides or is engaged in business . . . .

  . . . .

(15) The suit in the United States district court or State court shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue, except that judicial review of determinations regarding claims made pursuant to section 2025(c) of this title shall be a review on the administrative record.

(16) If the court determines that such administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence.